### STATE OF CONNECTICUT *v.* JOAN SIMMONDS

#### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 10-25818

Argued July 15—decided September 13, 1968

*John J. Donahue,* of Norwich, for the appellant (defendant).

*James J. Murphy, Jr.,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J.   The defendant was charged in an information with the crime of breach of the peace, alleged to have been committed on or about May 18, 1967, at Norwich, Connecticut, in violation of § 53-174 of the General Statutes.  Under Connecticut law, breach of the peace is a misdemeanor.   See § 1-1.

At the opening of the session of the Circuit Court held on May 22, 1967, the defendant was apparently one of a number of criminal defendants assembled in the courtroom that morning.  The presiding judge made an opening statement of the constitutional rights of all defendants collectively.   The judge

said: "I'd like to advise those who are going to be put to plea of your rights. Some of them you are familiar with I am sure. You have the right to be represented by an attorney. You have the right to refuse to make any statement. Any statement you may make may be used in evidence against you. And you have the right to be admitted to bail. Some of you may wish to have a postponement in order to have time to obtain counsel. If that is true, kindly inform us of that when your case is called." The trial judge then proceeded to arraign each defendant individually. The defendant, who was at all times unrepresented by counsel, entered a plea of not guilty to the charge of breach of the peace,[1] whereupon the court advised her that she could elect either trial by jury or by court. The defendant's response was: "I don't know . . . court. I guess court." The judge announced, "Court trial," and ordered the case set down for trial on May 26, 1967.

This appeal from the conviction is limited to two principal contentions, to wit: (1) Was the manner in which the defendants were informed of their rights constitutionally proper? (2) Was the content of the trial court's opening statement constitutionally sufficient?

I

Article first, § 8, of the Connecticut constitution (1965) provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ." Implementing these con-

---

[1] Conviction of the crime of breach of the peace carries with it the possibility of a substantial penalty—a fine of not more than $500 or imprisonment for not more than one year or both. General Statutes § 53-174.

stitutional requirements are several specific statutory commands. Section 54-1b required: "When any person is arrested without a warrant or under a warrant, . . . such person shall be presented before the circuit court session next held in the circuit where the offense is alleged to have been committed. Before any person so arrested is put to plea, he shall be advised that he has a right to retain counsel, that he has a right to refuse to make any statement and that any statement he makes may be introduced in evidence against him. Each such person shall be allowed a reasonable opportunity to consult counsel . . . ."[2] See *State* v. *DeJoseph,* 3 Conn. Cir. Ct. 624, 627, cert. denied, 385 U.S. 982; see also § 54-84; *State* v. *Annunziato,* 154 Conn. 41, 43. Each of the foregoing statutory requirements must be observed in such a manner as to promote rather than defeat the constitutional intent, for "the very purpose of the duty thus enjoined upon the court to advise an accused is to preserve to him a right which the Constitution has conferred upon him." *In re Turrieta,* 54 Cal. 2d 816, 820.

The Circuit Court in 1967 handled over 215,000 criminal offenses, resulting in crowded arraignment calendars and thereby posing urgent problems in the administration of criminal justice. This is particularly true of those circuit courts in our large municipalities which are called upon to deal with an unending stream of both major and minor offenses. We recognize the fact that a collective statement to a group of defendants may not be heard by those in the rear of the courtroom and, even if heard, may not be understood by those who possess below-average intelligence or have linguistic difficulties. "A constitutional . . . [issue] should

[2] Section 54-1b, as amended by Public Acts 1967, No. 549, § 9, effective October 1, 1968, clearly places the duty of advising criminal defendants of their rights upon the trial judge.

not be construed so as to defeat its evident purpose, but rather so as to give it effective operation and suppress the mischief at which it was aimed." *Jarrolt* v. *Moberly*, 103 U.S. 580, 586; *Palka* v. *Walker*, 124 Conn. 121, 127. "A constitutional issue, however, will not be decided on the basis of speculation or hypotheses not shown to affect the parties before the court." *In re Johnson*, 62 Cal. 2d 325, 332. We must also bear in mind that the statutory directives do not spell out the precise manner in which our courts are to apprise defendants of their constitutional rights. It is perhaps impossible to fashion a procedure which will accommodate the many diverse problems facing our crowded arraignment courts of today; rather, the circumstances of the method used to inform the defendants of their rights should, whenever challenged, be carefully weighed in the constitutional balance. In short, some measure of discretion must be given trial judges in handling these essential and important preliminary matters. To assure against possible individual shortcomings is not an insurmountable obstacle. The judge, having made his collective statement of rights, need only preface the arraignment of each defendant thereafter by asking whether that defendant heard and understood the general statement. Surely, this would appear to be a desirable practice.

In the case at bar, advice as to rights (§ 54-1b) was given in open court and given by the judge personally, and not through a clerk.[3] We find no con-

---

[3] The manner of informing defendants of their rights apparently used in the Connecticut Circuit Court, fourteenth circuit, in *Arbo* v. *Hegstrom*, 261 F. Sup. 397, does not conform with sound judicial practice. Although the point was only inferentially adverted to by Judge Blumenfeld, it was noted (p. 399): "On the day following the arrest and after a night in jail, petitioner [Arbo] was advised, as one of a group of about forty, by the assistant clerk of the Circuit Court . . . [fourteenth circuit], of his right to a continuance to obtain counsel." This is the duty of the trial judge; it may not be delegated.

stitutional defect in the manner in which the defendants were advised of their rights. See *In re Johnson,* supra, 333.

## II

We agree that the content of the court's opening statement, as applied to this defendant, was constitutionally insufficient. It failed to give proper weight to the potential seriousness of the charge against the defendant, which carried with it " 'the possibility of a substantial prison sentence' . . . . It would be a gross perversion of solid constitutional doctrine to find a rational distinction between one year in jail (a misdemeanor) and one day and a year in prison (a felony)." *Arbo* v. *Hegstrom,* 261 F. Sup. 397, 400. "Recent decisions . . . have made it clear that the adequacy of procedural safeguards will not be judged on the basis of whether the offense is a misdemeanor." *State* v. *Paulick,* 277 Minn. 140, 146; see *State ex rel. Plutshack* v. *Department of Health & Social Services,* 37 Wis. 2d 713, 722; cf. *Heller* v. *Connecticut,* 389 U.S. 902 (dissent from denial of certiorari); *DeJoseph* v. *Connecticut,* 385 U.S. 982 (dissent from denial of certiorari); *McDonald* v. *Moore,* 353 F.2d 106, 109; *Harvey* v. *Mississippi,* 340 F.2d 263, 271; *Winters* v. *Beck,* 239 Ark. 1151, cert. denied, 385 U.S. 907 (and see dissent).

Where therefore, as here, the defendant was faced with a serious misdemeanor charge, the court must make a reasonable and timely effort to determine whether the defendant understands his predicament and is capable of representing himself at all stages of the proceedings against him. The inquiry into the seriousness of the charge "must be viewed from that point in time with regard to the potential punishment, not from hindsight after conviction." *Irvin* v. *State,* 203 So. 2d 283, 287 (Ala. App.). "The inquiry into the defendant's ability to defend him-

self fulfills a two-fold purpose. It serves not only to determine his competence, but also to alert him to the seriousness of the action he contemplates as well as the pitfalls he may expect to encounter." *People* v. *Newton,* 258 Adv. Cal. App. 670, 673, 65 Cal. Rptr. 822, 823. That determination involves an exercise of discretion on the part of the trial judge which, in the absence of a showing of abuse, will not be disturbed on appeal.

We must also determine whether at any point in the proceedings the defendant effectively waived her right to counsel. "[I]t is axiomatic that unless the defendant knows of the right to counsel or is clearly advised of that right, then the right cannot be intentionally relinquished or waived." *McGarrah* v. *Dutton,* 381 F.2d 161, 164. This inquiry must be predicated upon the guidelines enunciated by the Supreme Court of the United States: (1) "'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights . . . ." *Johnson* v. *Zerbst,* 304 U.S. 458, 464; *Carnley* v. *Cochran,* 369 U.S. 506, 514. (2) "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley* v. *Cochran,* supra, 516. It is settled that "[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson* v. *Zerbst,* supra, 464. The making of that determination in a timely fashion is the "serious and weighty" responsibility of the trial judge. Id., 465. "Manifestly that determination must be made *before* any plea—guilty or otherwise

—is accepted by the trial court, or the right to counsel loses most of its meaning and effectiveness." *In re Johnson,* 62 Cal. 2d 325, 335. No showing of waiver appears in this case.

Additional considerations are present in the case at bar to distinguish it from the ordinary simple traffic misdemeanor. It is clear that the defendant had no conception of the procedural problems she faced when called to the witness stand to testify against her codefendant, also charged with breach of the peace. The trial judge was aware that the situation presented "a little bit of a problem"; he made efforts to assist the defendant as best he could, but "[a]s must generally be the case, the trial judge could not effectively discharge the roles of both judge and defense counsel." *Carnley* v. *Cochran,* supra, 510. There were important omissions in the guidance he gave. He did not apprise the defendant of vital procedural rights of which a layman could not be expected to know but to which defense counsel doubtless would have called attention. The trial judge did not advise the defendant of the possible penalty or of her right to make objections, cross-examine witnesses or present witnesses in her own behalf. These omissions are significant. See *State* v. *Reid,* 146 Conn. 227, 232; *State* v. *Walters,* 145 Conn. 60, 66. Without recounting the evidence, other circumstances attending this case only serve to accentuate the obstacles of trial without counsel.

We conclude that the court's opening statement, as applied to this defendant, was constitutionally insufficient in that it failed to apprise the defendant of her right to appointed counsel, and to grant her that right if it was then requested. See *Arbo* v. *Hegstrom,* 261 F. Sup. 397, 401.

Despite the infirmity of the proceedings, the defendant remains subject to trial for the crime charged.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion KINMONTH, J., concurred.

DEARINGTON, J. (concurring). I concur with the court's opinion in its holding that the defendant was entitled to be advised of a right to appointed counsel. I believe that the record indicates that the defendant was correctly advised of her rights as required by § 54-1b. However, it appears by the weight of authority, cited in the opinion, that in misdemeanor cases which could result in the imposition of a penalty of some magnitude the trial court is also required by due process, as guaranteed by the fourteenth amendment, to advise a defendant of his right to appointed counsel.